Greeít, J.
delivered the opinion of the court.
This is an action of replevin for two negroes, Rincy and her child, Trouble. The bill of exceptions discloses the following case: The negroes in question were originally the property of Lemmy Williams. On the 2nd day of February, 1844, he made a bill of sale of that date, for •the consideration stated in the deed, of nine hundred dollars, for three negro slaves, of whom Rincy was one, to Win. F. Williams, with a general warranty of title.
This bill of sale was duly proved and registered — but was in fact made to defraud creditors. The negro Rincy and her child were levied on by virtue of an execution against Lemmy Williams, and sold by the constable the 29th of April, 1845, to H. M. Atkins. John Walker redeemed the negroes from Atkins, and he permitted Lemmy Williams to redeem them from him. Williams took the negroes home, and kept them in his possession until his death.
Upon the death of Lemmy Williams, William K. Williams, who is his son, obtained possession of the negroes and sold them, by bill of sale, the 3rd of January, 1848, to the plaintiff McFall, for $250 — one hundred and fifty of which were not to be paid, should McFall lose the negroes.
McFall was put in possession of the negroes, and they were taken out of his possession by Thomas Dunbar, who claimed them as administrator of Lemmy Williams’ estate. Whereupon, McFall brought his action of reple-vin to recover them back. The plaintiff recovered judgment in the court below, and the defendant appeals to this court. The first question is, can the administrator of the fraudulent vendor, set up, in resistance of this action, the fraud of his intestate?
*507 It is supposed that as these negroes had been taken in execution as the property of Lemmy Williams, after the period of this fraudulent sale, and had been sold, and were afterwards held by persons, against whom the bill of sale of Lemmy Williams to William K. Williams, would have been vokWthat when they were repurchased by Lemmy Williams, he took them and held them, in right of the creditor, and that his title against the fraudulent sale was as good as that of the creditor. This position is untenable for' several reasons, first, because however Lemmy Williams may have obtained the negroes, after the execution sale, still this defence is an allegation of his own turpitude in the sale to W. K. Williams, which he is not permitted to make, to avoid his own deed — for, as between himself and William K. Williams, the fraudulent sale was good. 2. But in the bill of sale, to William K. Williams, there is a warranty of title. Now, as this bill of sale was good between the parties, the moment the vendor re-purchased the negroes and obtained them again, free from liability on account of the fraud, such title inured to the benefit of the fraudulent vendee, and vested in him a ;good title. Lemmy Williams is estopped, therefore, by his covenant to resist the title of his vendee. And it has been constantly held by this court, that an administrator cannot allege the fraud of his intestate, as a ground to set aside his contracts. Second, it is insisted, the purchase by McFall, from W. K. Williams was champertous. We do not think so. The negroes were in possession of his vendor, when he purchased them, and were delivered to him. It is true, he expected a law-suit, and on that account paid much less than the true value of the slaves. But the knowledge that some per *508 son claims one’s property and will probable sue for it, does not deprive him of the right of selling it — the property not being in the adverse possession of such claimant.
We think, there is no error in this record and affirm the judgment.